## STATE v. SIMON B. LYONS.[1]

### October 15, 1920.

### No. 21,881.

**Larceny — indictment sufficient.**

1. The indictment sufficiently charges the larceny of a check of the value of $600.

**Conviction sustained.**

2. The evidence sustains the conviction.

Simon B. Lyons was indicted by the grand jury of Ramsey county charged with the crime of grand larceny in the first degree, tried in the district court for that county before Haupt, J., and a jury which returned a verdict of guilty as charged in the indictment. From the judgment entered pursuant to the order for judgment and from an order denying his motion for a new trial, defendant appealed. Affirmed.

*F. D. Larrabee,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Harry H. Peterson,* Assistant County Attorney, for respondent.

HOLT, J.

Appellant, Simon B. Lyons, indicted jointly with Patrick Costello and Edward C. Corcoran, was convicted of the crime of grand larceny in the first degree, and appeals from the judgment and also from the order denying him a new trial.

The indictment charged that the three persons named, feloniously, with intent to deprive and defraud the true owner of her property, ob-

[1]Reported in 179 N. W. 484.

tained from one Caroline Macklett a check, signed by her, of the value of $600, by aid of false pretenses and the use of forged tax receipts. The appeal challenges the indictment and the evidence.

The fault with the indictment is found in that it contains no direct allegation that the property obtained was a check or bill of exchange, or that the words between the quotation marks in the indictment are a copy of the check. While it might have been better form to have followed the practice suggested as proper by appellant, we think a reasonable construction of the indictment leads to the conclusion that the subject of the larceny is stated to be a check, a copy of which is set out. The description of the property appropriated unmistakably designates a check, and the words within the quotation marks as clearly indicate a copy of the check as if it were specifically so alleged.

Costello was a clerk in the county auditor's office in Ramsey county and Corcoran was the desk clerk in the county treasurer's office, having charge of the clerks. In the spring of 1919, Costello suggested to Lyons that if he or his friends had taxes to pay a reduction could be had. Lyons was a tenant of Mrs. Macklett, known to her as Thomas Russell, and early in June, 1919, when he was paying rent, she, according to her testimony, made the remark that the money came in handy for the taxes. Lyons thereupon said he thought he could get them reduced, and she replied that she did not believe it, for she had tried without success. He replied that he would see; he thought he could. In a few days he came back, stating that he could get them reduced almost one-half. He got the descriptions of the properties from her and returned saying he could get them reduced to $600. She told him she did not believe it until she saw the receipts. He responded that he would bring the receipts, and in a few days he did bring tax receipts purporting to be issued by the county treasurer. These receipts were stamped with a fictitious stamp much resembling the one used in the county treasurer's office. By the stamp, payment was acknowledged as of May 31, 1919. He assured her they were genuine receipts. The total amount of taxes receipted for as paid was $1,008.43. She undertook to pay him the $600 with a check, and he requested that it be made payable to the order of cash, which she did. Later, the authorities discovered the irregularities in the county treasurer's office and began to check up the books. It was then

ascertained that the tax roll showed Mrs. Macklett's taxes paid, but the tax register indicated that no money had come to the treasury. The county attorney and deputy treasurer called on Mrs. Macklett and learned the circumstances under which she obtained the bogus tax receipts from her tenant. Lyons was identified as the tenant, brought to the police headquarters, and charged with being implicated in the wrongdoings in the treasurer's office. He denied all connection therewith. He was allowed to leave, but was requested to return the next day. A few hours after he left the police headquarters, he telephoned Mrs. Macklett, asking whether any one had spoken to her about her taxes, and advising her that, if any one did, she should say that she paid them over the counter. The next day Lyons returned to police headquarters and then admitted that he had procured the tax receipts for Mrs. Macklett from Costello to whom he had paid $600. He claimed that he borrowed this money from one Flynn, a saloonkeeper, and that when he obtained the check from Mrs. Macklett he turned it over to Flynn in payment of the loan. Flynn had indorsed the check, and testified that he lent Lyons the money.

That, under our statute, a larceny was committed, in obtaining this check from Mrs. Macklett, is admitted by the learned counsel for appellant. That his client participated in the execution of the crime must also be conceded. The only question open to debate is whether Lyons knew what was being done so that the jury were justified in finding that he intended to aid in the commission of the crime. Even if it be true that neither he nor Costello received anything from the proceeds of the check, or other remuneration for the part they took in the transaction, still if, knowing that Corcoran's scheme went to deprive Mrs. Macklett of her property, they aided therein, it evinces a felonious intent. A person's knowledge and intent is his own secret, except as revealed to others by his words and conduct. The latter must therefore constitute the evidence from which intent must be determined. It is submitted that the purport of the testimony above alluded to reveals guilty knowledge, especially when considered in the light of surrounding circumstances. Lyons was not an intimate or near friend of Mrs. Macklett. She did not even know his true name. It does not appear that Lyons thought he conferred any particular favor upon Costello by

his effort to get tax reductions.   He did not transact the business at any public office, but met Costello on the streets and in hotels or corridors. It is not reasonable that he should have gone to the trouble of borrowing $600 to be used solely for the benefit of his lessor.   His occupation would hardly incline the jury to the belief that he was much concerned that those with whom he came in contact should not lose their money, nor would his frequent past conflicts with penal statutes tend to credit his testimony.   Upon this record we are clear that the jury had ample support for the conclusion that appellant, in procuring the check from Mrs. Macklett, intended to feloniously deprive her of her property.

The judgment and order are affirmed.